EBEL *v.* PIEHL.

1. GIFTS—CHOSES IN ACTION—ASSIGNMENT.

Where defendant received property from his father upon a
promise to pay his sister a certain sum of money after his
father's death, the chose in action thus created, when assigned
by the father to his daughter, was enforceable by her against
defendant, after the father's death.

2. SAME—EVIDENCE.

Defendant, who had received property from his father upon a
verbal promise to pay his sister $400 at his father's death,
afterwards, in the presence of his sister, asked his father,
"What do you want me to give Kate when you are dead?"
The father replied, "I told you you were to give her $400 at
my death; I want you to give her writings." Defendant said
that it would be all right, and told his sister he would pay it.
*Held,* that the jury were warranted in finding that the father
transferred the cause of action to the sister.

3. SAME—GIFTS IN FUTURO AND IN PRÆSENTI.

The transfer by the father was not a gift *in futuro,* but a gift
*in præsenti* of a promise to pay in the future.

4. SAME—INSTRUCTIONS—ERROR—FAVORABLE RULINGS.

A charge that the transfer was a gift *in futuro,* and revocable
by the father, was not prejudicial to defendant.

5. SAME—ASSIGNMENT—QUESTION FOR JURY.

A charge that, if the father turned the property over to defend-
ant upon the latter's promise to pay plaintiff, the jury should
find for plaintiff, was error, as the question of the assignment
by the father to the daughter was denied by defendant.

6. APPEAL—QUESTIONS NOT RAISED BELOW.

An objection that plaintiff could not recover under the common
counts will not be considered on error, where the objection
was not made in the trial court.

Error to Cheboygan; Shepherd, J. Submitted May 15,
1903. (Docket No. 93.) Decided July 8, 1903.

*Assumpsit* by Catherine Ebel against Daniel Piehl for

money had and received.   From a judgment for plaintiff, defendant brings error.   Reversed.

*Frost & Sprague*, for appellant.

*Charles D. Barghoorn*, for appellee.

CARPENTER, J.   Defendant is plaintiff's brother.   In 1895 their father, who lived in Hanover, Canada, transferred to defendant property consisting of a house, two lots, notes, and cash, of the aggregate value of $1,500. According to plaintiff's testimony, defendant, on his return, said he would pay her $400 at their father's death. Subsequently the three — the father, the plaintiff, and defendant—had a conversation about the matter at plaintiff's residence.   At this time defendant asked his father: "What do you want me to give Kate [the plaintiff] when you are dead?"   The father replied:   "I told you you were to give her $400 at my death.   That was understood. * * * I want you to give her writings."   The defendant thereupon said:   "I didn't think you told me, but I should have done it anyway.   * * * That will be all right, father.   I will see to that,"—and, turning to plaintiff, said in English (the former conversation having been in German):   "I don't see what you want to bother father about that money for.   I am good for it; I am worth the money; and I told you I would pay it."   After the father's death, defendant discharged a mortgage of $196 which he held against plaintiff's property, and refused to pay the balance.   Plaintiff brought this suit on the common counts in *assumpsit*, to recover the balance claimed to be her due. Defendant testified that neither he nor his father ever agreed that plaintiff should be paid as she claims.   The case was submitted to the jury, who found for the plaintiff.   Defendant contends that, on the case made by the plaintiff, a verdict should have been directed in his favor, and that the court erred in charging the jury as hereinafter stated.

We think plaintiff made a case for the consideration of

the jury.    If it is true that, when the defendant made the
promise testified to by plaintiff, he had already received
the property under an agreement which imposed no other
obligation upon him than to "furnish his father with
money for his own personal use as long as he lived," there
was no consideration for defendant's promise, and it could
not, for that reason, be enforced.    But, if the testimony
of plaintiff is credited, defendant received the property
upon a promise that, on his father's death, $400 should be
paid to plaintiff.    This created a chose in action,—a chose
in action which, it is true, belonged to the father.    Though
intended for plaintiff's benefit, it could not be enforced by
her.    *Pipp* v. *Reynolds*, 20 Mich. 88.    The father might,
however, transfer it to her; and, if so transferred, she
could, as his assignee, enforce it.    In our judgment, a fair
construction of the conversation which occurred between
the parties to this suit and the father after the property
was received by defendant warrants, if it does not compel,
the conclusion that the father did transfer to plaintiff this
cause of action.    This is not the case of a gift *in futuro*,
and therefore is not subject to the law governing such
gifts.    Between the defendant and his father, it was an
existing cause of action.    Between the father and the
plaintiff, it was a gift,—a gift of a promise to pay money
in the future, of an existing cause of action; but the gift
itself was a gift *in præsenti*.    When the defendant, who
had promised to pay the money (a promise evidenced by
no writing), at the request of the father, to whom the
promise was made, agreed with the sister, for whose bene-
fit the money was to be paid, that it should be paid to her,
there was all the delivery possible under the circumstances,
and a delivery sufficient to answer the requirements of
law.    See article on "Novation," by Prof. J. B. Ames, 6
Harv. Law Rev., at page 189; *M'Fadden* v. *Jenkyns*, 1
Phillips, 153; *Meert* v. *Moessard*, 1 Moore & P. 8.    It
is true that the learned circuit judge, in charging the jury,
treated the gift as a gift *in futuro*, and said that it was
revocable by the father.    This, we think, was error; but it
was prejudicial to the plaintiff, and not to the defendant.

We think, however, the court erred in charging the jury as follows:

"Was the property turned over to Dan with the express understanding between Dan and his father that, at the old man's death, Dan should pay the plaintiff $400? * * * If you find that there was such an understanding as is claimed by the plaintiff, and old Mr. Piehl, until his death, continued of that mind,—that is, the desire to provide and give $400 to Catherine at his death,—your verdict will be for $204 * * * and interest."

According to this charge, plaintiff is entitled to a verdict even if her father did not assign to her the cause of action against defendant. This, as we have already shown, was error. The error in this part of the charge is not corrected elsewhere. We cannot assume that this error was not prejudicial, for, if defendant's testimony was believed, the assignment did not take place as plaintiff claimed.

The defendant insists that the plaintiff could not recover for this cause of action under the common counts in *assumpsit*. The record fails to show that this objection was made in the trial court, either during the taking of testimony or afterwards. The only exception that appears to have been taken until after the jury was charged is to the refusal of the court "to direct a verdict for the defendant of no cause of action." For this reason, we must decline to consider the objection in this court.

For the error pointed out, the judgment of the court below will be reversed, and a new trial granted.

The other Justices concurred.